**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| INDEPENDENT TRAINING AND APPRENTICESHIP PROGRAM, a California corporation; BRANDIN MOYER; HAROLD E. NUTTER, INC., a California corporation,<br>*Plaintiffs-Appellants*,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, an agency of the State of California; CHRISTINE BAKER, in her official capacity as Acting Director of the California Department of Industrial Relations; DIVISION OF APPRENTICESHIP STANDARDS; GLEN FORMAN, in his official capacity as Acting Chief, Division of Labor Standards Enforcement; JULIE SU, in her official capacity as Labor Commissioner,<br>*Defendants-Appellees*. | No. 11-17763<br><br>D.C. No. 2:11-cv-01047-GEB-DAD<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Senior District Judge, Presiding

Argued and Submitted
December 3, 2012—San Francisco, California

Filed September 18, 2013

Before: Michael Daly Hawkins, A. Wallace Tashima,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Tashima;
Concurrence by Judge Murguia

## SUMMARY[*]

**Labor Law**

The panel affirmed the district court's judgment in favor of the defendants in a suit seeking declaratory and injunctive relief on the ground that the California Department of Industrial Relations' actions were inconsistent with federal Fitzgerald Act regulations governing the employment of apprentices on public works projects qualifying as "Federal purposes."

The CDIR threatened to impose fines on two contractors that used apprentices enrolled in an apprenticeship program that was registered with the United States Department of Labor as an approved program for "Federal purposes" but that was not recognized by California as a state-approved apprenticeship program.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that, regardless of whether the Fitzgerald Act confers a private right of action, there was subject matter jurisdiction because the plaintiffs sought injunctive relief from state regulation on the ground that it was preempted by a federal statute.

The panel declined to afford controlling deference to the Secretary of Labor's new interpretation, in an amicus brief, of the meaning of "Federal purposes" under 29 C.F.R. § 29.2 because that interpretation was inconsistent with a prior interpretation, and there was a significant potential for unfair surprise. The panel nevertheless adopted the Secretary's new interpretation as the most persuasive construction of the regulation and held that a project qualifies as a "Federal purpose" under § 29.2 when conformity with federal apprenticeship standards is a condition of eligibility for federal assistance. The panel held that the CDIR's actions were not in contravention of the federal apprenticeship regulations because the construction projects at issue did not qualify as "Federal purposes." Accordingly, the plaintiffs' preemption claim failed.

The panel also affirmed the district court's judgment on claims under the dormant Commerce Clause and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Judge Murguia concurred in the opinion. She wrote separately to highlight that allowing the Department of Labor to retroactively withdraw a conclusive interpretation of its own ambiguous regulation exposed the parties to the same risk of unfair surprise as would deferring to the agency's new interpretation.

**COUNSEL**

Charles L. Post (argued), Zachary Smith, and Brendan J. Begley, Weintraub Genshlea Chediak Tobin & Tobin, Sacramento, California, for Plaintiffs-Appellants.

Fred Lonsdale (argued), Counsel; Katherine Zalewski, Chief Counsel; Steven McGinty, Assistant Chief Counsel; Gary O'Mara, Counsel, Department of Industrial Relations, State of California, Oakland, California, for Defendants-Appellees.

M. Patricia Smith, Solicitor of Labor; Steven J. Mandel, Deputy Solicitor for National Operations; Edward D. Sieger, Senior Attorney, United States Department of Labor, Washington, D.C.; Stuart F. Delery, Principal Deputy Assistant Attorney General; Michael Jay Singer and Abby C. Wright, Appellate Staff, United States Department of Justice, Civil Division, Washington, D.C., for the Acting Secretary of Labor, as *amicus curiae*.

---

**OPINION**

TASHIMA, Circuit Judge:

Pursuant to the National Apprenticeship Act of 1937 (also known as the "Fitzgerald Act"), federal regulations govern the employment of apprentices on public works projects qualifying as "Federal purposes," a term that is defined under the regulations. Plaintiff Independent Training and Apprenticeship Program ("I-TAP") is registered with the Department of Labor ("DOL") as an approved apprenticeship program for such Federal purposes. I-TAP is not, however, recognized by California as a state-approved apprenticeship

program.   Consequently, I-TAP enrollees may not be employed as bona fide apprentices on public works projects in California that do not fall within the scope of Federal purposes.  In 2010, the California Department of Industrial Relations ("CDIR") sent letters to two contractors asserting that they were not in compliance with California law and threatening to impose fines because the contractors were using I-TAP enrollees on public works projects that the CDIR asserted were not for Federal purposes.  Plaintiffs filed suit seeking declaratory and injunctive relief, principally on the ground that the CDIR's actions were inconsistent with the federal regulations and hence preempted.  The district court denied Plaintiffs' motion for injunctive relief.

On appeal, we are called upon to determine the meaning of "Federal purposes" under 29 C.F.R. § 29.2.  Because this is a question of first impression, following oral argument, we invited the Secretary of Labor (the "Secretary") to express her views as to the appropriate understanding of the term in the context of this case.   In her *amicus* brief, the Secretary informed us that the DOL recently had withdrawn its two previous opinion letters that had interpreted the term, and she advanced a new interpretation that does not encompass the public works projects at issue here.  For the reasons set forth below, we decline to afford controlling deference to the DOL's new interpretation under *Auer v. Robbins*, 519 U.S. 452 (1997), but we nevertheless adopt that interpretation as the most persuasive construction of the regulation at issue. Accordingly, we affirm.

## I.

## A.

The Fitzgerald Act does not delineate substantive standards for the regulation of apprenticeship programs. Rather, it authorizes and directs the Secretary:

> to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the Secretary of Education in accordance with section 17 of Title 20.

29 U.S.C. § 50.

The DOL promulgated implementing regulations for the Fitzgerald Act in 1977.[1]  *See* 42 Fed. Reg. 10138 (Feb. 18, 1977) (to be codified at 29 C.F.R. pt. 29).  These regulations

---

[1] The name of the subdivision within the DOL that administers the Fitzgerald Act has changed several times.  When the implementing regulations were first promulgated, that agency was known as the Bureau of Apprenticeship and Training.  For the majority of the period relevant to this suit, the agency was known as the Office of Apprenticeship Training, Employment and Labor Services ("OATELS").  Today, it is known as the Office of Apprenticeship.  For ease of reference, we refer to all of these agencies as the DOL.

prescribe the policies and procedures for the registration of apprenticeship programs for "certain Federal purposes." 29 C.F.R. § 29.1(b).  In turn, "Federal purposes" is defined as:

> any Federal contract, grant, agreement or arrangement dealing with apprenticeship; and any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right pertaining to apprenticeship.

29 C.F.R. § 29.2.

The DOL may approve an apprenticeship program for Federal purposes if the program meets certain minimum standards established under the regulations.  *See id.* §§ 29.3(a)–(b).  The DOL may also "recognize" a State Apprenticeship Agency ("SAA"), providing the SAA with concurrent authority to approve apprenticeship programs for Federal purposes.[2]  *See id.* § 29.13.  The DOL will only recognize a SAA if the state's apprenticeship laws are deemed consistent with federal policies and requirements, and the DOL can "derecognize" an SAA if the SAA fails to operate in conformity with the federal regulations.  *Id.* §§ 29.13, 29.14.

---

[2] The conferral of authority to SAAs is non-exclusive, meaning that in a state with a recognized SAA, an apprenticeship program can seek registration through either the DOL or the SAA.  *See* 29 C.F.R. §§ 29.13(a), (i).  An apprenticeship program seeking registration through an SAA, however, must also  meet the requirements of that state's apprenticeship laws, which, as evidenced by this case, may be more stringent than the standards set forth in the federal regulations.  *See id.* § 29.13(j)(1).

In California, apprenticeship training is administered by the Division of Apprenticeship Standards, a component of the CDIR.  *See S. Cal. Chap. of Associated Builders & Contractors, Inc. v. Cal. Apprenticeship Council*, 841 P.2d 1011, 1016 (Cal. 1992).   The California Apprenticeship Council ("CAC") is a 17-member body within the Division of Apprenticeship Standards that issues rules and regulations pertaining to apprenticeship and hears appeals of apprenticeship registration disputes.  *See id.*; *see also* Cal. Labor Code § 3070.

California provides public works contractors with an economic incentive to hire apprentices enrolled in state-approved programs.   Specifically, Labor Code § 1777.5 permits contractors to pay registered apprentices a wage rate that is lower than the "journeyman" rate otherwise required under California's prevailing wage law.  *See* Cal. Labor Code §§ 1777.5(b)–(c).  Public works contractors are also able to deduct from the fringe training contributions that must be made to the CAC any payments made to an approved apprenticeship program.  *See id.* § 1777.5(m)(1).

In 1978, the DOL recognized the CDIR and the CAC as the collective SAA for California for purposes of the Fitzgerald Act.  That recognition continued unfettered until 1999, when California enacted a controversial amendment to its apprenticeship laws that imposed stringent criteria, referred to as the "needs test," for the approval of new apprenticeship programs in the building and construction trades.  Under the needs test, a new apprenticeship program in these trades may only be approved if:  (1)"There is no existing apprenticeship program . . . serving the same craft or trade and geographic area"; (2) "Existing apprenticeship programs . . . that serve the same craft or trade and

geographic area do not have the capacity, or neglect or refuse, to dispatch sufficient apprentices to qualified employers at a public works site who are willing to abide by the applicable apprenticeship standards"; or (3) "Existing apprenticeship programs . . . that serve the same trade and geographic area have been identified by the [CAC] as deficient in meeting their obligations." *Id.* § 3075(b).

The DOL contended that the needs test frustrated the primary purposes of the Fitzgerald Act of expanding apprenticeship opportunities and promoting the entry of workers into skilled trades. Ultimately, the DOL derecognized the California SAAs. This determination was upheld in administrative review proceedings, and the CDIR and CAC were officially derecognized as of March 2, 2007. *See* 72 Fed. Reg. 9590 (Mar. 2, 2007). Thus, California no longer has the authority to register or oversee apprenticeship programs on public works projects in the State that qualify as Federal purposes. *See id.*

**B.**

I-TAP is a California corporation that is registered with the DOL as an approved apprenticeship program for Federal purposes.[3] Gray Electric Company ("Gray Electric") is an electrical contractor that employed I-TAP apprentices on two construction projects relevant to this suit – a construction project at the Chicago Park Elementary School ("Chicago

---

[3] Unlike most apprenticeship programs in California, I-TAP is a "unilateral" program that is sponsored by employers only, without union involvement. *See* Cal. Labor Code § 3075(a). The vast majority of apprenticeship programs in California are "joint" programs that are collaboratively sponsored by unions and employers. *See id.*

Park Project") and a construction project at Marysville High School ("Marysville Project").  Plaintiff Harold E. Nutter, Inc. ("Nutter Electric") is an electrical contractor that also employed I-TAP apprentices on various constructions projects, including a project at the Joint-Use Gymnasium at Williams Brotherhood Park/Merlos Institute in Stockton, California ("Stockton Project").

The funding structure of these projects is central to the instant dispute.  The Marysville Project was funded through the sale of traditional municipal bonds, the interest payments on which are exempt from federal taxes.  *See* 26 U.S.C. § 103(a) (exempting the receipt of interest payments on State or local bonds from gross income for federal income tax purposes).  The Chicago Park Project and the Stockton Project were each funded in part with "Build America Bonds."  Build America Bonds are taxable bonds created in 2009 pursuant to the American Recovery and Reinvestment Act, Pub. L. 111-5, div. B, § 1531, 123 Stat 115, 358 (2009), and take one of two forms:  (1) "Direct Payment" bonds, for which the federal government provides a direct payment to the issuing municipality on each date that the municipality makes interest payments; and (2) "Tax Credit" bonds, for which the federal government provides tax credits to investors who purchase the bonds.  *See* IRS Notice 2009-26, Build America Bonds and Direct Payment Subsidy Implementation (Apr. 20, 2009), *available at* http://www.irs.gov/pub/irs-drop/n-09-26.pdf.[4]

---

[4] The record does not disclose which form of Build America Bonds were used in the Chicago Park Project and the Stockton Project, but, for reasons explained below, the difference does not affect our determination of whether these projects fall under the definition of Federal purposes.

In 2010, the CDIR asserted that Gray Electric and Nutter Electric violated California's prevailing wage law in their employment of I-TAP apprentices on the above three projects.   The CDIR alleged that the companies were impermissibly paying wages and making fringe training contributions as if I-TAP were a recognized apprenticeship program, even though it is not registered under the State's apprenticeship laws.  In response, the contractors contended that I-TAP was registered for purposes of the projects because the projects met the definition of "Federal purposes," given the federal subsidies and tax exemptions associated with them.

When the CDIR threatened to take enforcement action against the contractors, Gray Electric removed its apprentices from I-TAP and placed them in a state-approved program. Plaintiff Brandin Moyer is one of Gray Electric's apprentices who was enrolled in I-TAP and transferred to a different program.  Moyer asserts that he was not given credit upon the transfer for his time spent in I-TAP, and as a result, his salary was reduced to that of a first-year apprentice.  Unlike Gray Electric, Nutter Electric did not remove its apprentices from I-TAP, and the CDIR imposed a Civil Wage and Penalty Assessment of $20,059.25 on Nutter Electric.

## C.

On April 18, 2011, Plaintiffs filed this action for declaratory and injunctive relief, alleging that Defendants had violated the Supremacy Clause, the dormant Commerce Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. On August 15, 2011, the district court denied Plaintiffs' motion for a preliminary injunction. With respect to Plaintiffs' preemption claim, the district court

held that the CDIR's actions were not in contravention of the federal apprenticeship regulations because the three projects at issue do not qualify as "Federal purposes" under 29 C.F.R. § 29.2.

Following the district court's decision, the parties stipulated to an order consolidating trial on the merits with the court's ruling on the preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a)(2). The district court entered final judgment on October 31, 2011, and Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

When a district court consolidates its ruling on a preliminary injunction with its decision on the merits under Rule 65(a)(2), we review the district court's factual findings for clear error and its conclusions of law de novo. *Associated Builders & Contractors of S. Cal. v. Nunn*, 356 F.3d 979, 984 (9th Cir. 2004). We review determinations concerning federal subject-matter jurisdiction de novo. *Sexton v. NDEX West, LLC*, 713 F.3d 533, 536 (9th Cir. 2013).

## III.

Defendants contend that subject-matter jurisdiction is lacking because the Fitzgerald Act does not confer a private right of action upon Plaintiffs. However, we need not decide whether such a statutory right of action exists. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), the Supreme Court established that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute[,]. . . presents a federal

question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.* at 96 n.14; *see also Verizon Md. Inc. v. Public Serv. Comm'n of Md*, 535 U.S. 635, 642–43 (2002). We have applied this principle on numerous occasions, upholding jurisdiction over preemption claims seeking prospective relief. *See, e.g.*, *Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1055–62 (9th Cir. 2008); *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1995); *Hydrostorage, Inc. v. N. Cal. Boilermakers Local Joint Apprenticeship Comm.*, 891 F.2d 719, 724–25 (9th Cir. 1989), *abrogated on other grounds as stated in Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1044 (9th Cir. 2007).

Here, Plaintiffs pursue a preemption claim for declaratory and injunctive relief, and there is no suggestion that the claim is "frivolous" or "made solely for the purpose of obtaining jurisdiction." *Verizon Md.*, 535 U.S. at 643 (internal quotation marks omitted). Accordingly, we conclude that federal subject-matter jurisdiction exists.[5]

## IV.

In entering final judgment pursuant to Rule 65(a)(2), the district court denied Plaintiffs' request for permanent injunctive relief. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 369 (1989); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 n.9 (2d Cir. 1999). To be

---

[5] In *Douglas v. Independent Living Center of Southern California, Inc.*, 132 S. Ct. 1204 (2012), a divided Supreme Court declined to address the question of whether a plaintiff may maintain a cause of action under the Supremacy Clause. Thus, we remain bound by the above-cited precedents.

entitled to a permanent injunction, a plaintiff must demonstrate:  (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (3) that the balance of hardships justify a remedy in equity; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExch., LLC*, 547 U.S. 388, 391 (2006); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").  The focus of our inquiry is the merits of Plaintiffs' constitutional claims, particularly Plaintiffs' preemption challenge.

## A.

Plaintiffs' preemption claim turns on whether the three construction projects at issue constitute "Federal purposes" under 29 C.F.R. § 29.2.  If so, the CDIR's refusal to allow the contractors to treat I-TAP enrollees as recognized apprentices – for instance, by paying a lower apprentice wage rate – would be in conflict with federal law, because I-TAP is a registered program for Federal purposes.  In other words, the CDIR would be precluded from enforcing state apprenticeship criteria, including the needs test, with respect to the projects.

As previously noted, "Federal purposes" is defined as:

> [A]ny Federal contract, grant, agreement or arrangement dealing with apprenticeship; and any Federal financial or other assistance, benefit, privilege, contribution, allowance,

> exemption, preference or right pertaining to apprenticeship.

29 C.F.R. § 29.2.  The meaning of this highly ambiguous definition is a matter of first impression across the federal courts.  Yet, we are not entirely without guidance; the DOL has interpreted the term on several occasions, including as *amicus curiae*, at the court's invitation, in the present action.

### 1.

In 2004, DOL officials authored two opinion letters intended to clarify the scope of Federal purposes.  First, on July 16, 2004, Emily Stover DeRocco, the Assistant Secretary of Labor for Employment and Training Administration, sent a letter to John M. Rea, the Acting Director of the CDIR. DeRocco wrote, in pertinent part:

> DOL's position is that all [SAAs], including California's, are to accept programs and apprentices registered by [DOL], for Federal purposes, on all federally funded or supported public works projects, regardless of how much Federal funding or support is provided. Accordingly, the Department expects the [SAAs] to accept [DOL] registration for an entire public works project, even if the project is funded in part by the state or local government.

In the second opinion letter, dated October 4, 2004, Anthony Swoope, the Administrator of OATELS (then the DOL agency that administered the Fitzgerald Act), provided a similar interpretation to Rea:

> [DOL's] registered apprentices must be recognized as registered apprentices for the purposes of all public works funded in whole or part with Federal funds. This is based, in part, on 29 CFR 29.2[], which defines "Federal purposes" to include "<u>any</u> Federal contract, grant, agreement or arrangement dealing with apprenticeship; and <u>any</u> Federal financial or other assistance, benefit, privilege contribution, allowance, exemption, preference or right pertaining to apprenticeship." (emphasis added).

> We are not suggesting that [DOL's] registered apprentices working on state funded public projects (*i.e.*, those projects involving <u>no</u> Federal financial assistance) would be entitled to be paid at the wage rate set under 8 CCR § 208(b). We recognize that California has the authority to determine who is a registered apprentice for the purposes of public works projects funded solely with non-Federal funds.

Thus, under these two 2004 opinion letters, the DOL interpreted Federal purposes to encompass "all federally funded or supported public works projects," which excluded only "those projects involving no Federal financial assistance."

In their initial briefs on appeal, the parties treated the 2004 opinion letters as operative and debated the import of the letters in the context of this case. Following oral argument, we invited the Secretary to express her views as to the appropriate interpretation of "Federal purposes," and

specifically whether the term encompasses public works projects funded in the manner of the three projects at issue here.  In response, the Secretary filed a brief as *amicus curiae*.  In that brief, the Secretary informed us that, on May 14, 2012, the DOL had formally withdrawn the 2004 opinion letters.  This occurred via a letter sent by Jane Oates, the Assistant Secretary of Employment and Training Administration, to Christine Baker, the Director of the CDIR.[6]  In the letter, Oates provided a limited explanation for the DOL's decision, stating only that "[t]he Department of Labor has determined that the language used in those letters was overbroad in the discussion of 'Federal purposes.'"  Oates did not offer a new interpretation, but she did convey that the DOL "may issue further guidance, as it deems appropriate."

In its *amicus* brief, the DOL now offers its new interpretation.  Under this interpretation, "'Federal purposes' refers to federal laws or actions that in some way address apprenticeship.  Put differently, the matters included within this definition of 'Federal purposes' make conformity with federal apprenticeship standards a *condition* of eligibility for the federal assistance at issue."  The DOL *amicus* brief elaborates, "[A] federal contract, funding, or benefit must be 'conditioned' on conformity to the Department's apprenticeship standards for it to be for a 'Federal purpose' under the part 29 regulations."

---

[6] For reasons that remain unexplained, Defendants had not informed the court of the existence of the May 14, 2012, letter even though it was sent, and presumably received, prior to the filing of Defendants' principal brief on appeal.

Although the DOL's new interpretation is nearly as difficult to decipher as the underlying regulation that it seeks to interpret, the parties agree[7] that the practical effect of the interpretation is that Federal purposes would refer to federal contracts, funding, or other forms of financial assistance that require compliance with some federal law, where, in turn, that law requires adherence to federal apprenticeship standards. The most common example would be projects subject to the requirements of the Davis-Bacon Act.[8]  Pursuant to federal regulations, only apprentices from federally-registered programs, *i.e.*, programs registered with the DOL or a recognized SAA, may be used on such projects.  *See* 29 C.F.R. § 5.5(a)(4)(i).   Thus, when federal financial assistance is conditioned on compliance with the Davis-Bacon Act, that assistance is implicitly conditioned on compliance with federal apprenticeship standards.

The DOL contends that controlling deference is owed to its new interpretation, pursuant to the principle laid down in *Auer*, 519 U.S. 452.  Defendants concur and urge adoption of the DOL's interpretation.  Plaintiffs contend that no deference

---

[7] The parties filed supplemental briefs in response to the Secretary's *amicus* brief.

[8] The Davis-Bacon Act covers "every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia." 40 U.S.C. § 3142(a).  However, Congress has also required compliance with the Davis-Bacon Act's labor standards in numerous other laws. *See* 29 C.F.R. § 5.1(a).  The Davis-Bacon Act requirements can therefore apply to projects that are financed, in whole or in part, by the Federal Government, even though the Federal Government is not a contracting party.

should be afforded to the new interpretation given the inconsistency in the DOL's position.  Instead, Plaintiffs argue that the proper interpretation is that put forward in the now-withdrawn 2004 opinion letters, under which Federal purposes would encompass all public works projects receiving any degree of federal financial support.

**2.**

Under *Auer*, a court will defer to an agency's interpretation of an ambiguous regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation, *or* there is reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 984–85 (9th Cir. 2012) (internal citation omitted) (emphasis added).  With respect to the latter inquiry, "[i]ndicia of inadequate consideration include conflicts between the agency's current and previous interpretations; signs that the agency's interpretation amounts to no more than a convenient litigating position; or an appearance that the agency's interpretation is no more than a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830 n.4 (9th Cir. 2012) (en banc) (internal quotation marks and citations omitted).

The Supreme Court has also declined to afford *Auer* deference when to do so "would seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012) (internal quotation marks and alteration omitted).  That is, the Court has deemed *Auer* deference

unsuitable when such deference would result in "unfair surprise" to one of the litigants. *See id.*

Here, two of these concerns are present – the DOL's interpretation is inconsistent with its prior interpretation, and there is a significant potential for unfair surprise. There is no doubt that the DOL's position has changed. The DOL's previous interpretation essentially encompassed any project with any degree of federal involvement or financial assistance, but its present interpretation covers only a limited subset of such projects.

More troubling, though, is the risk of unfair surprise resulting from this change in position. The DOL left the 2004 opinion letters in place for roughly eight years, spanning across rulemaking in 2008 that updated the part 29 regulations. *See* 73 Fed. Reg. 64402-01 (Oct. 9, 2008). "[W]here . . . an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute." *See Christopher*, 132 S. Ct. at 2168. Plaintiffs surely relied on the prior interpretation in guiding their conduct at the time the instant controversy arose, only to have the DOL change the interpretation several months after the district court issued its order and while appellate briefing was underway. *Cf. Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871, 881 (2011) ("[T]here is no reason to suspect that the position . . . reflects anything other than the agency's fair and considered judgment as to what the regulation required *at the time this dispute arose*." (emphasis added)). We decline to afford controlling deference where an agency pulls the rug out from under litigants that have relied on a long-established, prior interpretation of a regulation, especially where, as here, that

regulation is highly ambiguous in nature.[9]   To proceed otherwise would validate the criticism that *Auer* enables agencies to "promulgate vague and open-ended regulations that they can later interpret as they see fit, thereby frustrating the notice and predictability purposes of rulemaking." *Christopher*, 132 S. Ct. at 2168 (internal quotation marks and alteration omitted).  As made evident below, our decision not to afford *Auer* deference does not dictate that we turn a blind eye to the DOL's new interpretation; it means only that the deferential *Auer* standard does not control.

**3.**

In *Christopher*, the Supreme Court clarified that when *Auer* deference is not warranted, an agency's interpretation of an ambiguous regulation should be evaluated under the principle laid down in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Christopher*, 132 S. Ct. at 2168–69; *see also Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 97 (2d Cir. 2012) (noting that even if the agency's interpretation were not entitled to *Auer* deference, the court would still afford it substantial deference under *Skidmore*).  This approach is particularly well-suited to the circumstances of the present case, where we deny *Auer* deference for reasons unrelated to the persuasiveness of the agency's reasoning.   Under

---

[9] We recognize that a claim of unfair surprise holds particular force when the agency's new interpretation would result in liability for a party's past conduct.  *See Christopher*, 132 S. Ct. at 2167 (noting that one of the parties would be subject to "massive liability . . . for conduct that occurred well before [the] interpretation was announced").  In the instant case, although Plaintiffs seek declaratory and injunctive relief, retroactive liability is still implicated given that Nutter Electric was assessed a penalty of $20,059.25 for conduct preceding the DOL's new interpretation, and Plaintiffs seek injunctive relief that would rescind this penalty.

*Skidmore*, we accord an agency's interpretation "a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher*, 132 S. Ct. at 2169 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)).

We conclude that the DOL's new interpretation is the most persuasive construction of the regulation. As a textual matter, the interpretation is superior to that advanced by Plaintiffs because it gives effect to the phrases "dealing with apprenticeship" and "pertaining to apprenticeship." Under the DOL's interpretation, a federal contract "deal[s] with apprenticeship," or federal financial assistance "pertain[s] to apprenticeship," if the federal contract or assistance is conditioned on compliance with federal apprenticeship standards. In contrast, Plaintiffs' reading of Federal purposes would render these phrases mere surplusage. That is, under Plaintiffs' interpretation, the scope of Federal purposes would remain unchanged if "dealing with apprenticeship" and "pertaining to apprenticeship" were removed from the definition, because Plaintiffs' interpretation already encompasses any federal contract and any project receiving federal financial assistance.

The DOL's interpretation also derives support from the history of the Fitzgerald Act's implementing regulations. In the preamble to the 1977 regulations, the DOL acknowledged that there had been confusion over the definition of Federal purposes, and it explained that "[e]xamples of such Federal purposes are the Davis-Bacon Act and the Service Contract Act." 42 Fed. Reg. 10138, 10138 (Feb. 18, 1977). Like the Davis-Bacon Act, the regulations implementing the Service

Contract Act restrict the use of apprentices to those from federally-registered programs.[10] *See* 29 C.F.R. § 4.6(p). The reference to both of these laws is therefore consistent with the DOL's current interpretation, because a contract (or other federal assistance) that requires compliance with the Davis-Bacon Act or Service Contract Act is also conditioned on compliance with federal apprenticeship standards.

A DOL circular issued in 1971 similarly supports the DOL's interpretation. Under 29 C.F.R. part 30, which concerns equality of opportunity in apprenticeship programs and was in place prior to the part 29 regulations, the DOL had employed the term Federal purposes but had failed to define it under the regulations. *See* 36 Fed. Reg. 6810 (Apr. 8, 1971) (amending 29 C.F.R. § 30.1). In a circular released on July 1, 1971, the DOL offered a definition identical to that later adopted in 29 C.F.R. § 29.2. U.S. Dep't of Labor, Bureau of Apprenticeship & Training Circular 72-1 (July 1, 1971). The circular then offered examples of federal regulations that would fall under this definition. All of these regulations contained accommodations for apprentices but required that the apprenticeship programs in question meet federally-prescribed standards. *See* 33 Fed. Reg. 9880, 9884 (July 10, 1968) (use of apprentices under Service Contract Act); 32 Fed. Reg. 13,401, 13,405 (Sept. 23, 1967) (apprenticeship program criteria for Veterans Administration benefits); 29 Fed. Reg. 13,462, 13,464 (Sept. 30, 1964) (use of apprentices under Davis-Bacon Act); 29 Fed. Reg. at 13,464–65 (tolerances for apprentices under Work Hours Standards Act); 17 Fed. Reg. 5855, 5855–56 (July 1, 1952)

---

[10] The Service Contract Act applies to federal contracts exceeding $2,500 that have as their principal purpose the furnishing of services through the use of service employees. *See* 41 U.S.C. § 6702(a).

(apprenticeship program criteria for Selective Service deferments); 16 Fed. Reg. 8884, 8884 (Sept. 1, 1951) (use of apprentices under Fair Labor Standards Act).  From these examples, one can infer that when the DOL subsequently developed the part 29 regulations, the DOL's intent was to create a regulatory scheme that would govern instances where the Federal Government's involvement triggers a law or regulation that contemplates federal apprenticeship standards. This purpose is accomplished under the DOL's new interpretation.

The examples provided in the regulatory history not only support the DOL's interpretation, but they also significantly undermine Plaintiffs' position.  If Federal purposes were intended to cover *all* federal contracts, the DOL could have simply stated that outright in the preamble to the 1977 regulations, rather than invoking the Davis-Bacon Act and the Service Contract Act, which each cover only a subset of federal contracts.  Moreover, if the DOL had intended for Federal purposes to cover the enormous number of public works projects financed with tax-exempt municipal bonds, one would think that it would have mentioned this along with the other examples cited in the historical documents.  These points tie into a broader critique of Plaintiffs' interpretation, which is that if the DOL had intended to define Federal purposes in the all-encompassing manner that Plaintiffs advance, it would have been relatively easy for the DOL to do so.  By instead employing an intricate definition and citing specific examples of federal assistance that would be covered, the DOL evidenced an intent for there to be a limit on the scope of Federal purposes.  The DOL's current interpretation provides the most persuasive account that has been put forward as to the limitation that was intended.

We thus find the DOL's new interpretation to be compelling.  While we reach this conclusion based on the strength and persuasiveness of the DOL's reasoning alone, we note that additional deference is warranted under *Skidmore* given the "thoroughness evident in [the agency's] consideration." *Mead*, 533 U.S. at 228 (quoting *Skidmore*, 323 U.S. at 140).  The Secretary's *amicus* brief provides an in depth treatment of the text and history of 29 C.F.R. § 29.2. This stands in stark contrast to the 2004 opinion letters, which were essentially devoid of analysis justifying the interpretations put forward.

For these reasons, we adopt the DOL's new interpretation of Federal purposes, which requires of agreements, contracts, etc., that "conformity with federal apprenticeship standards [be] a condition of eligibility for the federal assistance at issue."[11]

**4.**

Plaintiffs concede that the three projects implicated in this case are not encompassed by this understanding of Federal purposes; neither Build America Bonds nor tax-exempt municipal bonds condition the federal assistance provided on compliance with federal apprenticeship standards.  Indeed, the two projects funded with Build America Bonds illuminate the basis for the DOL's current position.  In addition to Build America Bonds, the Recovery Act created various bonds that *do* require compliance with Davis-Bacon Act standards.  *See* Pub. L. No. 111-5, § 1601, 123 Stat. at 362 (subjecting new

---

[11] Although the concurring opinion expresses some concern over "the unfortunate situation that our law on retroactivity creates," we do not reach that issue because it was neither raised nor argued by Plaintiffs.

clean renewable bonds, qualified energy conservation bonds, qualified zone academy bonds, qualified school construction bonds, and recovery zone economic development bonds to the requirements of the Davis-Bacon Act).  Had the Chicago Park Project and the Stockton Project been funded with these bonds rather than Build America Bonds, the projects would fall within the scope of Federal purposes.  Hence, under the DOL's interpretation, Congress exercises its discretion as to when public works projects will be subject to the federal apprenticeship regulations.

Because the three projects do not qualify as Federal purposes, it was not impermissible for the CDIR to require the contractors on the projects to comply with California's apprenticeship standards.   Accordingly, Plaintiffs' preemption claim fails.

**B.**

Plaintiffs pursue several additional constitutional claims.  First, Plaintiffs contend that California's needs test interferes with interstate commerce in violation of the dormant Commerce Clause.  Our precedents provide for two levels of scrutiny for challenges to a state statute under the dormant Commerce Clause.  *See Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010).   If the statute discriminates against interstate commerce, it will be subject to the "strictest scrutiny."   *Id.* (internal quotation marks omitted).  Discrimination in this context means "*differential treatment* of in-state and out-of-state economic interests that benefits the former and burdens the latter."   *Id.* (internal quotation marks omitted).   If the state statute does not discriminate against interstate commerce, it will be upheld unless the burden imposed on interstate commerce is "clearly

excessive in relation to the putative local benefits." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1149 (9th Cir. 2012) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

The needs test does not discriminate against interstate commerce. All apprenticeship programs seeking recognition must meet the test, regardless of where those programs, or the sponsoring entities, are located. While this test may benefit existing programs over new ones, it does not provide for differential treatment of in-state and out-of-state economic interests. *Cf. Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 427–29 (3d Cir. 2011) (finding Delaware's apprenticeship regulations to be in violation of the dormant Commerce Clause where they required out-of-state contractors to maintain a permanent office location within Delaware in order to sponsor an apprenticeship program). Indeed, the lack of discrimination is evidenced in this very case, as the aggrieved apprenticeship program, I-TAP, is a California corporation.

Under the resulting standard of review, Plaintiffs have not demonstrated that the needs test imposes a substantial burden on interstate commerce, and they certainly have not demonstrated that any burden imposed is "clearly excessive" in relation to the putative local benefits. In this regard, we note that even the Administrative Law Judge who upheld the DOL's decision to derecognize the California agencies recognized that there were putative local benefits associated with the needs test. These benefits include improving the chances that a graduating apprentice will be able to obtain employment in a specific trade within a particular geographic area. Given these putative benefits and the lack of any

showing of a substantial burden on interstate commerce, Plaintiffs' dormant Commerce Clause challenge must fail.

Plaintiffs' equal protection and substantive due process challenges fail for similar reasons.  To survive an equal protection challenge, economic legislation need only be "rationally related to a legitimate state interest."  *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010) (internal quotation marks omitted).  Likewise, such legislation will not be struck down on substantive due process grounds so long as it "implements a rational means of achieving a legitimate governmental end."  *Meyer v. Portfolio Recovery Assocs, LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012) (internal quotation marks omitted).  The putative benefits of the needs test are more than sufficient to satisfy these minimal rational basis tests.

## V.

Plaintiffs have not demonstrated success on the merits on any of their claims.  Accordingly, the judgment of the district court is **AFFIRMED.**  Each party shall bear his, her, or its own costs on appeal.

MURGUIA, Circuit Judge, concurring:

I concur in Judge Tashima's opinion, but write separately to highlight the unfortunate situation that our law on retroactivity creates in this case.  In 2004, the Department of Labor ("DOL") interpreted the phrase "Federal purposes" broadly in two letters that should have been given controlling deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Nutter Electric employed I-TAP apprentices on projects that it thought were "Federal purposes" under DOL's then-controlling interpretation.  We learned after oral argument, however, that the DOL had changed its position while this appeal was pending, withdrawing the 2004 interpretation and replacing it with a much narrower one that means the projects were not Federal purposes—thereby exposing Nutter to liability under California's wage law for employing I-TAP apprentices.

We do not defer to the new interpretation because the DOL "pull[ed] the rug out from under litigants that [] relied on a long-established, prior interpretation of [the] regulation." Maj. Op. at 20.  As the Supreme Court instructs, deferring to the agency in this situation would "frustrat[e] the notice and predictability purposes of rulemaking."  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168 (2012). But the solution—not deferring to the agency's new interpretation—does not solve the problem—the risk of an unpredictable surprise to Nutter.  In fact, in this case, not deferring to the agency makes the problem worse: because we do not defer to the agency, we must entertain the fiction that we are merely proclaiming what the meaning of the regulation has always been, and our interpretation therefore applies to conduct that occurred in the past.  *See Morales-Izquierdo v. DHS*, 600 F.3d 1076, 1088–89 (9th Cir. 2010). Rather than keeping the rug in place, we simply push aside the Department of Labor, grab hold of the rug, give it a strong pull, and watch Nutter tumble.

This result, while perhaps the unintended consequence of precedent from the Supreme Court and this court, does not make sense.  We should recognize that allowing an agency to retroactively *withdraw* a conclusive interpretation of its own

ambiguous regulation exposes regulated parties to the same risk of unfair surprise that leads us to scrutinize the retroactive application of new regulations and interpretations. *See Cort v. Crabtree*, 113 F.3d 1081, 1086–87 (9th Cir. 1997) (holding that a new interpretation of a Bureau of Prisons regulation did not apply retroactively); *see also Garfias-Rodriguez v. Holder*, 702 F.3d 504, 518 (9th Cir. 2012) (en banc) (describing balancing test used to determine whether a new administrative rule applies retroactively).