**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, *Plaintiff-Appellee*, <br><br> v. <br><br> STATE OF ALASKA, Department of Transportation and Public Facilities, *Defendant-Appellant.* | No. 19-35824 <br><br> D.C. No. 1:17-cv-00009-HRH <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Alaska
H. Russel Holland, District Judge, Presiding

Argued and Submitted June 4, 2020
Anchorage, Alaska

Filed January 15, 2021

Before: Morgan Christen, Paul J. Watford, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Watford;
Dissent by Judge Christen

# SUMMARY[*]

**Family and Medical Leave Act of 1993**

The panel reversed the district court's summary judgment in favor of the Secretary of Labor in the Secretary's action alleging that the State of Alaska miscalculated the amount of Family and Medical Leave Act ("FMLA") leave that certain employees of the Alaska Marine Highway System ("AMHS") were entitled to take.

The FMLA grants eligible employees "a total of 12 workweeks of leave during any 12-month period" to attend to qualifying family and medical needs. 29 U.S.C. § 2612(a)(1). At issue is the meaning of "workweek" as applied to employees who work a rotational schedule of seven days on followed by seven days off. AMHS employs "traditional" employees – those who work a regular 40 hour week with typically five days on followed by two days off, and "rotational" employees – those who work a regular schedule of seven days on followed by seven days off. Both types of employees generally work the same number of hours per year, and are generally paid the same amount. As to types of FMLA leave, an employee may take either "continuous" leave or "intermittent" leave. The Secretary contends that Alaska violated the FMLA as to rotational employees who take continuous leave.

The panel held that Congress intended to adopt the definition of "workweek" contained in Fair Labor Standards

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Act regulation 29 C.F.R. § 778.105 when it granted employees "a total of 12 workweeks of leave" under the FMLA. This definition does not revolve around an individual employee's own work schedule, but is simply a week-long period, designated in advance by the employer, during which the employer is in operation. The panel held that the Secretary's reading of "workweek" conflicted with Congress's understanding of how FMLA leave would be calculated. The panel further held that when a rotational employee takes continuous leave, both his on and off weeks count as "workweeks of leave" under 29 U.S.C. § 2612(a)(1). Thus, Alaska may insist that rotational employees who take 12 workweeks of continuous leave return to work 12 weeks later.

The panel held that it need not defer to the Secretary's contrary interpretation of the statute. The panel held further that the Secretary was not entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Specifically, the panel disagreed with the Secretary's argument that dictionary definitions of the term "workweek" supported his reading of the statute. The panel rejected the Secretary's assertion that his interpretation of "workweek" was supported by regulations issued by the Department of Labor in 1995, two years after the FMLA's passage. The panel rejected the remaining challenges by the Secretary.

The panel held that when an employee working a "one week on, one week off" schedule takes continuous leave, an employer may count both the on and off weeks against the employee's FMLA leave entitlement. Alaska's method of calculating rotational employees' continuous leave therefore did not violate the statute. The panel remanded with instructions to enter summary judgment in Alaska's favor.

Judge Christen dissented because she would give deference to the Secretary's interpretation and affirm the district court's summary judgment order  She would hold that the district court gave "workweek" its plain and ordinary meaning, and correctly ruled that the State's interpretation violated FMLA because it denied rotational employees the leave guaranteed by Congress: up to twelve workweeks of unpaid leave from work.

## COUNSEL

Katherine Demarest (argued), Assistant Attorney General, Department of Law, Anchorage, Alaska, for Defendant-Appellant.

Rachel Goldberg (argued), Counsel for Appellate Litigation; Sarah K. Marcus, Deputy Associate Solicitor; Jennifer S. Brand, Associate Solicitor; Kate O'Scannlain, Solicitor of Labor; Office of the Solicitor, United States Department of Labor, Washington, D.C.; for Plaintiffs-Appellees.

**OPINION**

WATFORD, Circuit Judge:

The Family and Medical Leave Act of 1993 (FMLA) grants eligible employees "a total of 12 workweeks of leave during any 12-month period" to attend to qualifying family and medical needs. 29 U.S.C. § 2612(a)(1). We are asked to decide what the term "workweeks" means as applied to employees who work a rotational schedule of seven days on followed by seven days off.

I

The issue arises in a suit brought by the Secretary of Labor against the State of Alaska's Department of Transportation and Public Facilities. The Secretary contends that Alaska is miscalculating the amount of FMLA leave that certain employees of the Alaska Marine Highway System (AMHS) are entitled to take. Before turning to the specifics of the Secretary's contention, we must distinguish between two types of employees and two types of FMLA leave.

As to types of employees, the AMHS employs what we will call "traditional" employees and "rotational" employees. Simplified somewhat, traditional employees are those who work a regular schedule of 40 hours each week, typically resulting in five days on followed by two days off. Rotational employees, by contrast, work a regular schedule of seven days on followed by seven days off—that is, 80 hours one week and zero hours the next. Both types of employees generally work the same number of hours over

the course of a year, and both are generally paid the same amount.[1]

As to types of FMLA leave, an employee may take either "continuous" leave or "intermittent" leave.  Continuous leave, as the name suggests, is leave taken in one continuous block of time, up to the maximum of 12 consecutive workweeks.  Continuous leave is the default form of leave. It may be taken for any of the qualifying family and medical needs covered by the statute: to bond with a new child, to care for a family member with a serious health condition, or to attend to the employee's own serious health condition. § 2612(a)(1).

Intermittent leave is the exception.  Unless the employer agrees otherwise, it may be taken only to attend to a serious health condition of the employee or a family member, and then only when medically necessary.  § 2612(b)(1). Intermittent leave is defined as "leave taken in separate periods of time due to a single illness or injury, rather than for one continuous period of time."  29 C.F.R. § 825.102.  It can be taken in full-week increments of several weeks or in partial-week increments of as little as one day or one hour. *Id.*; *see also* § 825.205(a)(1).  Either way, the FMLA provides that the taking of intermittent leave "shall not result in a reduction in the total amount of leave to which the employee is entitled under subsection (a) beyond the amount

---

[1] The situation is more complicated than this, but the details are immaterial.  For example, some rotational employees work two weeks on followed by two weeks off, or even four weeks on followed by four weeks off.  The analysis is no different with respect to these employees, so for simplicity's sake we will assume that all rotational employees work a "one week on, one week off" schedule.

of leave actually taken." 29 U.S.C. § 2612(b)(1); *see also* 29 C.F.R. § 825.205(b)(1).[2]

Against that backdrop, we can turn to the specifics of the Secretary's allegations in this case. The Secretary does not challenge Alaska's method of calculating FMLA leave with respect to traditional employees or with respect to employees (traditional or rotational) who take intermittent leave. But as to *rotational* employees who take *continuous* leave, the Secretary contends that Alaska is violating the FMLA. In Alaska's view, a rotational employee working a "one week on, one week off" schedule who takes 12 workweeks of continuous leave must return to work 12 weeks later because both the "on" and "off" weeks count against the employee's FMLA leave entitlement. In the Secretary's view, the employee should return to work 24 weeks later, because a rotational employee's off weeks cannot be counted as "workweeks of leave" under § 2612(a)(1). As the Secretary puts it in his brief, only weeks in which an employee was otherwise scheduled to work can count as workweeks of leave, for "there is no work to take leave from when an employee is not scheduled to work."

On cross-motions for summary judgment, the district court agreed with the Secretary. The court held that the term "workweek" refers to "time that an employee is *actually* required to be at work." Since rotational employees are not required to be at work during their off weeks, the court concluded that those weeks cannot be counted against an employee's FMLA leave entitlement. Following that ruling,

---

[2] There is also a third type of leave in which an employee works "a reduced leave schedule," that is, fewer than "the usual number of hours per workweek, or hours per workday." 29 U.S.C. §§ 2611(9), 2612(b)(1). It is not directly implicated here.

the parties stipulated to entry of a permanent injunction enjoining Alaska "from counting weeks during which AMHS rotational employees are not scheduled to work as FMLA leave." The State of Alaska appeals.

## II

The parties agree that the outcome of this appeal turns on what the term "workweek" means. Unfortunately, Congress did not define the term when it enacted the FMLA. But Congress had previously used the same term in a different employee-rights statute enacted in 1938: the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* That Act generally prohibits employers from employing any covered employee "for a *workweek* longer than forty hours unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." § 207(a)(1) (emphasis added). In regulations first promulgated in the 1960s, the Department of Labor construed the term "workweek" to mean, essentially, a fixed period of seven consecutive days:

> An employee's workweek is a fixed and regularly recurring period of 168 hours— seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees. *Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him.*

29 C.F.R. § 778.105 (emphasis added). The italicized sentence makes clear that a "workweek" does not revolve around an individual employee's own work schedule. It is, instead, simply a week-long period, designated in advance by the employer, during which the employer is in operation.

In our view, the first question to ask is whether Congress intended to adopt this definition of "workweek" when it granted employees "a total of 12 workweeks of leave" under the FMLA. We think it did. The term had acquired an established meaning under the FLSA decades before Congress enacted the FMLA, and Congress deliberately chose to use that term as opposed to the unmodified term "week." Both the FMLA and the FLSA address the same general subject matter, in that both statutes afford employees certain minimum protections in the workplace. In both statutes, Congress used the term "workweek" for the same purpose: to provide a fixed, pre-established period of time against which an employee's entitlement to statutory benefits can be measured, while at the same time affording employers flexibility to establish that period on a basis other than a Monday-through-Sunday calendar week. And, as the Secretary acknowledges in his brief, in both statutes Congress used the term "to prevent an employer from manipulating an employee's workweek to deny the employee his full statutory entitlement."

Given the similarity in general subject matter addressed by the two statutes, and the similar function the term "workweek" serves in both, it seems reasonable to infer that Congress intended to borrow the term's established meaning under the FLSA when it enacted the FMLA. *See Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018) ("if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it")

(quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

The inference that Congress intended to import the meaning of "workweek" from the FLSA is strengthened when we examine Title II of the FMLA—the portion of the Act dealing with civil service employees. *See* Family and Medical Leave Act of 1993, Pub. L. No. 103-3, § 201, 107 Stat. 6, 19–23 (codified at 5 U.S.C. §§ 6381–6387). Title II grants civil service employees the same leave entitlement conferred by § 2612(a)(1), except that the relevant provision states, "an employee shall be entitled to a total of 12 *administrative workweeks* of leave during any 12-month period." 5 U.S.C. § 6382(a)(1) (emphasis added). The use of the phrase "administrative workweeks" is significant because civil service regulations had long defined the term as "a period of 7 consecutive calendar days designated in advance by the head of an agency." 5 C.F.R. § 610.102(a) (1993). That definition, of course, is "essentially equivalent" to the regulatory definition of the term "workweek" under the FLSA. *Sanford v. Weinberger*, 752 F.2d 636, 637 n.3 (Fed. Cir. 1985). Like the regulatory definition of "workweek," the definition of "administrative workweek" does not focus on an individual employee's own work schedule. Had Congress intended to import *that* concept into the leave entitlement conferred by § 6382, it would have used a different defined term: "regularly scheduled administrative workweek," which the civil service regulations define as "the period within an administrative workweek . . . within which the employee *is regularly scheduled to work*." 5 C.F.R. § 610.102(b) (emphasis added).

Congress's use of the term "administrative workweek" confirms that it did not conceive of "workweeks of leave"

for civil service employees as consisting exclusively of weeks in which an employee was scheduled to work, as the Secretary urges. And nothing in the text or structure of the FMLA indicates that Congress intended the leave entitlement granted to civil service employees to differ in scope from the entitlement granted to all other employees.

The FMLA's purpose and legislative history further bolster the conclusion that Congress rejected the Secretary's narrow interpretation of the term "workweek." Congress enacted the FMLA to establish a minimum standard of leave that accommodates the competing interests of employers and employees. 29 U.S.C. § 2601(b); H.R. Rep. No. 103-8, pt. 1, pp. 16–17 (1993). On one hand, the statute encourages employees to prioritize their family and medical needs without fear of negative repercussions at work. Thus, when an employee takes FMLA leave, her employer must maintain her health benefits and hold her position open until she returns. 29 U.S.C. §§ 2601(b), 2614. On the other hand, the statute limits the burdens imposed on the employer. FMLA leave need not be paid leave, and an employee must attempt to schedule her leave in a way that minimizes disruptions to the employer. §§ 2601(b), 2612(c)–(e). The 12-workweek leave entitlement is a prime example of this carefully calibrated balance. As one House Report noted:

> The amount of time available for leave also reflects a compromise. The leave period was reduced to 12 weeks in response to concerns raised by employers who maintained that it was significantly easier to adjust work schedules or find temporary replacements over the shorter time period. While not ideal from the employees' perspective, a twelve week minimum represents a middle ground

> between the needs of workers and an employer's business needs.

H.R. Rep. No. 102-135, pt. 1, p. 37 (1991).

The Secretary's reading of "workweek" conflicts with Congress's understanding of how FMLA leave would be calculated. To see why, consider application of the statute in the context of parental leave. When drafting the statute, Congress heard testimony from multiple child development experts about the need for parents to form bonds with their children during the initial stages of child rearing. *See, e.g.*, H.R. Rep. No. 103-8, pt. 1, p. 27. Although some of these experts recommended four to six months of FMLA leave, Congress settled on "12 weeks"—the minimum time in which the experts believed these critical bonds could be formed. H.R. Rep. No. 103-8, pt. 2, p. 12. As noted, anything longer was considered too burdensome for employers. H.R. Rep. No. 102-135, pt. 1, p. 37.

If all employees receive a maximum of 12 consecutive weeks of continuous FMLA leave, the balance struck by Congress remains intact: Employees receive the time they need to bond with a new son or daughter, while employers experience relatively limited disruptions. But if rotational employees are entitled to 24 consecutive weeks of continuous FMLA leave, as the Secretary contends, the compromise Congress enacted falls apart. Employees with a "one week on, one week off" schedule would receive the very benefit that Congress declined to provide: six months to bond with a new son or daughter. And the burden imposed on employers, particularly with respect to cost, would increase significantly. Replacing a rotational employee over a 24-week period would obviously cost the employer twice as much as replacing such an employee for 12 weeks.

The Secretary's reading of the statute would also create a seemingly unjustified disparity in treatment between traditional and rotational employees. For example, in the hypothetical just considered, a traditional employee who takes FMLA leave upon the birth of his child must return to work 12 weeks later. But a rotational employee who takes parental leave at the same time need not return for 24 weeks—despite the fact that both employees over the course of that period would typically work the same overall number of hours and receive the same pay. The Secretary does not explain why Congress would have privileged rotational employees over traditional employees merely because over a two-week period a rotational employee's 80 hours of work are allocated over seven days, while a traditional employee's 80 hours of work are allocated over ten. If Congress had viewed rotational employees as differently situated due to their non-traditional schedules, it presumably would have said so by carving out a special rule for them in the statute—just as it did for other categories of employees, notably servicemembers and school workers. *See* 29 U.S.C. §§ 2612(a)(3), 2618.

For these reasons, we conclude that the term "workweek" in § 2612(a)(1) has the same meaning it carries under the FLSA. It is a fixed, pre-established period of seven consecutive days in which the employer is operating. Under that reading of the term, when a rotational employee takes continuous leave, both his on and off weeks count as "workweeks of leave" under § 2612(a)(1). Thus, Alaska may insist that rotational employees who take 12 workweeks of continuous leave return to work 12 weeks later.

## III

We have explained above why Alaska's reading of the statutory term "workweek" is most faithful to the FMLA's

text, structure, and purpose.  The only remaining question is whether we must nevertheless defer to the Secretary's contrary interpretation of the statute.  The answer is no.

The Department of Labor has not promulgated regulations that define the term "workweek" or that adopt special rules governing rotational employees.  As a result, no deference is owed to the Secretary's interpretation under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The Secretary argues that his interpretation is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  Under *Skidmore*, the weight to be accorded the Secretary's interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Id.* at 140.  We have given careful consideration to each of these factors, but none of them persuades us that the Secretary's reading of the statute is the better one.  We address below the main points the Secretary raises in arguing for *Skidmore* deference.

First, we do not agree with the Secretary's argument that dictionary definitions of the term "workweek" support his reading of the statute.  The primary dictionary cited by the Secretary defines "workweek" to mean "the hours or days of work in a calendar week."  Webster's Third New International Dictionary 2635 (1993).  That definition does not tell us whether a rotational employee's off weeks count as workweeks because it does not specify whether the frame of reference is the employer's work schedule or the employee's—it could be either one.  But in any event, for the reasons given above, we think Congress chose to borrow the definition of "workweek" developed under the FLSA,

making contemporaneous dictionary definitions of the term irrelevant to the question before us.

Second, the Secretary asserts that his interpretation of "workweek" is supported by regulations issued by the Department of Labor in 1995, two years after the FMLA's passage.  The Secretary points in particular to the provision now codified at 29 C.F.R § 825.200(h), which provides basic guidelines for calculating the amount of FMLA leave an employee takes.  As relevant here, § 825.200(h) states:

> [I]f for some reason the employer's business activity has temporarily ceased and employees generally are not expected to report for work for one or more weeks (e.g., a school closing two weeks for the Christmas/New Year holiday or the summer vacation or an employer closing the plant for retooling or repairs), the days the employer's activities have ceased do not count against the employee's FMLA leave entitlement.

According to the Secretary, this provision shows that FMLA leave does not include weeks in which an employee is not expected to report for work.  We disagree.  By its terms, § 825.200(h) pertains only to circumstances in which the employer's operations have temporarily ceased.  It says nothing about weeks in which the employer is operating, which is the situation at issue here.

Third, in advancing a broader interpretation of § 825.200(h), the Secretary relies on two statements in the regulatory preamble, both of which, at first glance, appear to support the Secretary's view.  When read in context, however, neither statement stands for the far-reaching proposition the Secretary suggests.

Let's start with the preamble statement addressing school employees.  In response to the Department of Labor's request for public comment, one organization recommended that "all periods of leave taken by school employees should count as FMLA leave, including any period of leave that occurs outside the school term."  60 Fed. Reg. 2180, 2229 (Jan. 6, 1995).  The Department rejected this suggestion and explained:

> An absence taken when the employee would not otherwise be required to report for duty is not leave, FMLA or otherwise.  For example, the regulations do not require an employee, who normally works Monday through Friday, and is taking intermittent leave, to have counted as leave the weekend days (*i.e.*, Saturday and Sunday).  If the employee(s), absent FMLA, would not have otherwise been required to take some form of leave to cover the absence, then the absence is not to be counted against the employee's FMLA leave entitlement.  Section 825.200(f) [now § 825.200(h)] has been added to the Final Rule to clarify this issue.

*Id.*  Although the first line of this response is phrased in broad terms, the full statement illustrates a narrow proposition—an employee is not on FMLA leave when an employer is closed for business.  If a school is on break for one or more weeks, those weeks will not count as FMLA leave.  29 C.F.R. § 825.200(h).  Likewise, when school employees take intermittent leave, weekends will have no impact on the amount of leave taken, as schools are not open for business during the weekend.  Had the Department of Labor intended to extend the first line of this statement

beyond its immediate context—and thereby create a bright-line rule applicable even when an employer is operating—it could easily have incorporated language to that effect in the final rule.  But the text of § 825.200(h) reflects nothing of the sort.

The other preamble statement on which the Secretary relies addresses the calculation of intermittent leave.  60 Fed. Reg. at 2203.  Two commenters submitted questions on this topic, one seeking to clarify that "FMLA leave may not be charged during a week when work would not otherwise be available," and the other asking how to count FMLA leave when employees "work seven days and then are off for seven days."  *Id.*  The Department of Labor responded:

> An employee's FMLA leave entitlement may only be reduced for time which the employee would otherwise be required to report for duty, *but for the taking of the leave*.  If the employee is not scheduled to report for work, the time period involved may not be counted as FMLA leave.  See § 825.200(f).

*Id.*  The Secretary implies that this statement all but resolves the question presented in this case.  We again disagree.  The statement cites 29 C.F.R. § 825.200(f), which, as noted above, simply provides that weeks during which an employer has temporarily ceased operations do not count against an employee's FMLA leave entitlement.  Even if this statement was intended to cover weeks in which the employer is operating, it still lacks the power to persuade.  The statement does not explicitly address continuous leave—it appears under the heading "Determining the Amount of Intermittent/Reduced Leave."  And, assuming it applies to weeks in which the employer is operating, its

method of counting full weeks of intermittent leave finds little support in the statute and regulations.

As explained at the outset, intermittent leave can be taken in full-week increments or in increments of less than one week. This distinction, which the preamble statement overlooks, matters. When an employee takes intermittent leave for less than a full week, the employer must calculate the amount of leave taken by comparing the number of hours or days the employee worked to the number of hours or days the employee was scheduled to work. Were it otherwise, the employer could end up reducing the employee's FMLA leave entitlement "beyond the amount of leave actually taken."    29 U.S.C. § 2612(b)(1); *see* 29 C.F.R. § 825.205(b)(1). But when an employee takes intermittent leave for a full week, he is on leave for the entire seven-day period during which the employer is operating, and thus his specific work schedule is of little relevance. *See* 29 C.F.R. § 825.205(b)(1) (explaining how to calculate intermittent leave based on an employee's normal work schedule only for leave taken in less than full-week increments).

The Secretary's final claim to *Skidmore* deference rests on two opinion letters from the Department of Labor. In the first letter, the Department defined "workweek" as "the employee's usual or normal schedule (hours/days per week)," and explained that the workweek "is the controlling factor for determining how much leave an employee is entitled to use when taking FMLA leave intermittently." U.S. Department of Labor, Wage & Hour Division, Opinion Letter (July 19, 1999). In the second letter, however, the Department distinguished an "employee's established 7-day workweek" of "Sunday through Saturday" from the employee's "normal workweek *schedule* of 34 hours, Monday through Friday." U.S. Department of Labor, Wage

& Hour Division, Opinion Letter (May 9, 2002) (emphasis added).  The Department then used the employee's normal workweek schedule as the basis for calculating intermittent leave, and described how to account for weeks in which an employee works a fraction of her scheduled hours.  *Id.* Taken together, these letters merely emphasize the same point made above:  While an employee's own work schedule is relevant when calculating intermittent leave taken in less than full-week increments, it has little bearing in the continuous leave context.

*        *        *

When an employee working a "one week on, one week off" schedule takes continuous leave, an employer may count both the on and off weeks against the employee's FMLA leave entitlement.  Alaska's method of calculating rotational employees' continuous leave therefore does not violate the statute.  We reverse the district court's grant of summary judgment to the Secretary and remand with instructions to enter summary judgment in Alaska's favor.

**REVERSED and REMANDED.**

CHRISTEN, Circuit Judge, dissenting:

The Family and Medical Leave Act of 1993 (FMLA) guarantees eligible employees up to twelve workweeks of unpaid leave to tend to their own serious health conditions, to care for family members' serious health conditions, or for maternity/paternity leave.  29 U.S.C. § 2612(a)(1).  The Act does not define "workweek" and the parties dispute how to calculate twelve workweeks of leave for employees working week-on/week-off schedules.  The majority imports the Fair

Labor Standards Act's definition and concludes that, as used in the FMLA, "workweek" "does not revolve around an individual employee's own work schedule," but instead means a "fixed, pre-established period of seven consecutive days in which the employer is operating."

A workweek clearly comprises seven consecutive days, but by pegging "workweek" to the employer's schedule rather than the employee's schedule, the majority concludes that any employee who is absent for an FMLA-approved reason is necessarily on leave if she is caring for a serious medical condition when the employer is open for business. This definition of workweek allows the majority to affirm Alaska's practice of charging employees working week-on/week-off schedules with taking leave from work if they tend to medical conditions on days when their employers are operating—even if they were scheduled to be off duty.

I respectfully dissent. The district court gave "workweek" its plain and ordinary meaning, *see FDIC v. Meyer*, 510 U.S. 471, 476 (1994), and correctly ruled that the State's interpretation violates the FMLA because it denies rotational employees the leave Congress guaranteed: up to twelve workweeks of unpaid leave from work. 29 U.S.C. § 2612(a)(1).

If "workweek" is considered without regard to the context provided by the FMLA, one could conclude the term is ambiguous because this seven-day unit of time could be viewed as the time the employer is operational or as the time the employee is scheduled to work. But we do not interpret statutory terms in a vacuum; and here, the FMLA's provisions governing intermittent leave require that "workweek" means an employee's regular weekly work schedule, not the time an employer is open for business. Separately, our precedent requires that we give deference to

the Secretary's long-standing definition: an FMLA workweek is a week during which an employee is scheduled to work. And finally, the definition the majority borrows from the Fair Labor Standards Act of 1938 (FLSA) lends no support to the majority's conclusion because the FLSA's forty-hour threshold triggering overtime wages is absolutely calculated by reference to the employee's weekly work schedule.

# I

The State of Alaska, Department of Transportation and Public Facilities operates the Alaska Marine Highway System (AMHS). The AMHS provides passenger ferry service throughout Southeast and Southwest Alaska. Some AMHS employees work traditional Monday-to-Friday schedules; others work rotational week-on/week-off schedules.[1] In 2017, the Secretary of Labor filed a complaint in district court alleging that the State was miscalculating FMLA leave for certain AMHS employees. The State allowed its employees to be absent for qualifying reasons for up to twelve consecutive weeks, regardless of their work schedules. For employees working week-on/week-off schedules, twelve consecutive weeks includes six weeks the employees would be scheduled to work and six weeks they would not be scheduled to work. The net result was the State only allowed rotational employees six weeks of leave from work, and the Secretary alleged the State's practice violated the FMLA's guarantee that eligible employees "shall be

---

[1] I agree with the majority that the outcome of this case does not depend on which particular type of rotational schedule a given employee works, and adopt the majority's convention of assuming that all rotational employees work week-on/week-off schedules.

entitled to a total of 12 workweeks of leave . . . ."  29 U.S.C. § 2612(a)(1).

The district court granted summary judgment for the Secretary.  The court reasoned "a plain and sensible reading of Section 2612(a) would be that a 'workweek' is time that an employee is actually required to be at work."  Using this definition, the district court concluded the FMLA does not permit the State to count rotational employees' "off-weeks" as FMLA leave.  In my view, the district court's ruling should be affirmed.

## II

I begin with the text of the statute.  *See, e.g.*, *BedRoc., Ltd. v. United States*, 541 U.S. 176, 183 (2004) (plurality); *United States v. Havelock*, 664 F.3d 1284, 1292 (9th Cir. 2012) (en banc) ("[W]e are not in the business of rewriting the law, but that of interpreting Congress's words when it enacted the statute.").  The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" to care for family members or recuperate from serious health conditions. 29 U.S.C. § 2612(a)(1).  FMLA leave can be taken in consecutive weeks, or it may be taken intermittently.  *Id.*, (b)(1); *see also* 29 C.F.R. § 825.205.

Intermittent leave is "leave taken in separate periods of time due to a single illness or injury."  29 C.F.R. § 825.102. The implementing regulation provides as an example "leave taken several days at a time spread over a period of six months, such as for chemotherapy."  *Id.*  Employees may take intermittent leave to care for their own or a family member's serious health condition if it is medically necessary, but unless the employee and the employer agree,

employees may not take intermittent FMLA leave for maternity/paternity purposes. 29 U.S.C. § 2612(b)(1).

The district court gave "workweeks" its plain and ordinary meaning because the statute does not define the term. *See Meyer*, 510 U.S. at 476; *Joffe v. Google, Inc.*, 746 F.3d 920, 927 (9th Cir. 2013) (observing undefined terms are given their "ordinary meaning"). At the time Congress enacted the FMLA, the Oxford English Dictionary defined a "week" as a "space of seven successive days beginning with the day traditionally fixed as the first day of the week." Oxford English Dictionary (2d ed. 1989); *see Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (explaining the court "may follow the common practice of consulting dictionaries" to determine a term's "ordinary and plain meaning . . . at the time the statute was adopted" (citing *Johnson v. Alijan*, 490 F.3d 778, 780 (9th Cir. 2007))). The 1989 Oxford English Dictionary did not have a stand-alone definition for "workweek," but it defined week "with a prefixed word" as "a week during which some event takes place" and "a week during which attention is focused on a particular topic." Oxford English Dictionary (2d ed. 1989); *see also Workweek*, Webster's Third New International Dictionary 2635 (1993) ("the hours or days of work in a calendar week").

These definitions are in line with the common understanding of the difference between a "week" and a "workweek." A week is any seven-day period; a workweek is a seven-day period during which work occurs. The district court focused on Congress's use of the term "workweeks" rather than "weeks" when it ruled that "a plain and sensible reading of Section 2612(a) would be that a 'workweek' is time that an employee is actually required to work." The district court explained, "[t]he statute provides that an

eligible employee is entitled to twelve *workweeks* of FMLA leave each year," not "twelve *weeks* of FMLA leave." The district court observed that this definition ensures "both rotational and non-rotational employees would receive the twelve workweeks of FMLA leave to which they are entitled."

The district court's ruling, that a "workweek" is defined by the period employees are "actually required to work," is supported by the statutory context. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining plain meaning is determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole").

The first contextual clue is the statute's use of "workweeks" as the unit of leave guaranteed by the Act: the FMLA provides "12 workweeks *of leave*." 29 U.S.C. § 2612(a)(1) (emphasis added). Leave is defined as "[p]ermission asked for or granted to do something." Oxford English Dictionary (2d ed. 1989); *see also* Black's Law Dictionary (6th ed. 1990). As recognized in the preamble to the FMLA's implementing regulations promulgated in 1995, "[a]n absence taken when the employee would not otherwise be required to report for duty is not leave, FMLA or otherwise." The Family and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2229 (Jan. 6, 1995) (FMLA Preamble). In other words, absences during weeks in which employees are not scheduled to work are not "leave" because such absences do not involve employees missing work they would otherwise be doing.

The district court's ruling is also supported by the FMLA's intermittent leave provisions. The FMLA expressly guarantees that "[t]he taking of leave intermittently . . . shall not result in a reduction in the total

amount of leave to which the employee is entitled," i.e., qualifying employees are entitled to leave in an amount equal to twelve of their regularly scheduled workweeks, even if they take it in small increments for treatments that extend for many weeks or months, such as dialysis or chemotherapy. 29 U.S.C. § 2612(b)(1).

The regulations implementing intermittent leave make clear that absences when an employee is not scheduled to work may not be counted when intermittent leave is calculated.

> (b) Calculation of leave.
>
> (1) When an employee takes leave on an intermittent or reduced leave schedule, only the amount of leave actually taken may be counted toward the employee's leave entitlement. The actual workweek is the basis of leave entitlement. . . . An eligible employee is entitled to up to a total of 12 workweeks of leave, or 26 workweeks in the case of military caregiver leave, *and the total number of hours contained in those workweeks is necessarily dependent on the specific hours the employee would have worked but for the use of leave*.

29 C.F.R. § 825.205(b)(1) (emphasis added). Further reinforcing the district court's ruling, the implementing regulations provide that if an employee's weekly schedule permanently changes before the FMLA leave period begins, the employee's new weekly work schedule determines her "workweek." *See id.* § 825.205(b)(2) ("If an employer has made a permanent or long-term change in the employee's

schedule . . . the hours worked under the new schedule are to be used for making [the intermittent leave] calculation."). "Workweek" therefore means the hours an employee would otherwise be scheduled to work.

These implementing regulations leave no doubt that "workweek" is defined by employees' individual work schedules when leave is taken on an intermittent basis, and they underscore that when Congress guaranteed "12 workweeks of leave," it meant twelve weeks of *leave*, not merely twelve weeks' absence from the workplace. Despite the FMLA's express language prohibiting employers from reducing employees' leave entitlements "beyond the amount of leave actually taken," 29 U.S.C. § 2612(b)(1), the majority concludes the State may do just that when calculating FMLA leave for rotational employees.

Though "workweek" means employees' weekly work schedules when intermittent leave is calculated, the majority decides that, when employees take their FMLA leave in consecutive weeks, "workweek" includes any days the employer is operating regardless of the employees' work schedules. The majority's interpretation runs afoul of fundamental rules of statutory construction because it requires that "workweek" have two different meanings within the same statute.[2] "[P]rovisions of a text should be interpreted in a way that renders them compatible, not contradictory," and this is not a situation where "context and

---

[2] *See* READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (Thomson/West, 1st ed. 2012) ("[W]here a word has a clear and definite meaning when used in one part of a document, but has not when used in another, the presumption is that the word is intended to have the same meaning in the latter as in the former part." (quoting HERBERT BROOM, A SELECTION OF LEGAL MAXIMS 443 (Joseph Gerald Pease & Herbert Chitty eds., 8th ed. 1911)) (alteration omitted).

other considerations . . . make it impossible to" render intermittent and non-intermittent leave compatible. Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 180 (Thomson/West, 1st ed. 2012) (Reading Law). Congress guaranteed twelve workweeks of leave from work, and it emphasized that twelve meant twelve by explicitly prohibiting employers from counting as intermittent leave days employees are not otherwise scheduled to work. 29 U.S.C. § 2612(b)(1).

## III

Even if "workweek" is stripped of its statutory context and treated as an ambiguous term, the familiar *Skidmore* analysis supports the Secretary's interpretation. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Under *Skidmore*, the weight given to the Secretary's interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* Every one of these factors suggests the Secretary's interpretation is entitled to deference.

First, it is evident the Secretary thoroughly considered the interpretation the Department of Labor (DOL) advances here. *See id.* In 1995, DOL issued final rules implementing the FMLA. *See generally* FMLA Preamble. In the preamble to those regulations, DOL responded to comments relating to the precise question at issue: "how a week of FMLA leave would be counted for employees who work seven days and then are off for seven days." 60 Fed. Reg. at 2203. The agency explained "[a]n employee's FMLA leave entitlement may only be reduced for time which the employee would otherwise be required to report for duty, but for the taking of the leave." *Id.* Even more specifically, the agency stated

that "[i]f the employee is not scheduled to report for work, the time period involved may not be counted as FMLA leave." *Id.*   The preamble further provided that "[a]n absence taken when the employee would not otherwise be required to report for duty is not leave, FMLA or otherwise." *Id.* at 2229.

Our court has recognized that agencies "take[] pains to understand and effectuate the congressional intent underlying the statute," and "are held accountable to the public through the formal rulemaking process." *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 829 (9th Cir. 2012) (en banc).  By engaging in the "rigors of rulemaking . . . an agency presumably undertakes careful deliberation about how best to effectuate statutory policies during the demanding process of promulgating regulations that go beyond simply restating a statute." *Id.*

The Secretary's interpretation is also entitled to *Skidmore* deference because it has been entirely consistent over time.  *Skidmore*, 323 U.S. at 140.  In this dispute with the State, the Secretary advances the same definition of "workweek" that DOL announced in 1995: "[i]f the employee is not scheduled to report for work, the time period involved may not be counted as FMLA leave."  60 Fed. Reg. at 2203.  Similarly, in response to a comment suggesting "that all periods of leave taken by school employees should count as FMLA leave, including any period of leave that occurs outside the school term," DOL disagreed and explained "[a]n absence taken when the employee would not otherwise be required to report for duty is not leave, FMLA or otherwise." *Id.* at 2229.

In 1999, the Secretary again interpreted "workweek" as referring to employees' regular work schedules.  That year, DOL explained in an opinion letter that "[u]nder the FMLA,

the term 'workweek' is the employee's usual or normal schedule (hours/days per week) prior to the start of FMLA leave[.]" U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (July 19, 1999). In 2002, DOL again explained that "the focus is always on the workweek, and the employee's 'normal' workweek (hours/days per week) prior to the start of FMLA leave is the controlling factor for determining how much leave an employee is entitled to use." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (May 9, 2002). DOL's opinion letters show the Secretary has consistently defined workweek as a unit of the employee's own weekly work schedule, and this consistency suggests the Secretary's interpretation is owed *Skidmore* deference.

The majority brushes aside the Secretary's prior consistent interpretations of "workweek" because they were articulated in response to comments addressing regulations implementing intermittent leave and leave for school employees. But Congress granted "12 workweeks of leave" for eligible employees regardless of whether they take intermittent or continuous leave. 29 U.S.C. §§ 2612(a)(1), (b)(1). Consistent with the language Congress chose, the Secretary interprets "workweek" to have the same meaning, regardless of the form of leave taken or by whom. Thus, these provisions illustrate a fundamental weakness in the majority's analysis: "a word or phrase is presumed to bear the same meaning throughout a text," but the majority's interpretation requires that "workweeks" be defined two different ways within the same statute. Reading Law 170 ("[W]here a word has a clear and definite meaning when used in one part of a document, but has not when used in another, the presumption is that the word is intended to have the same meaning in the latter as in the former part." (alteration and quotation omitted)). Defining "workweek" to include all weeks the employer is operational, as the

majority does, is contrary to the FMLA's intermittent leave provisions.

*Skidmore* also directs that we consider the persuasiveness of the Secretary's interpretation. 323 U.S. at 140; *see Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1037 (9th Cir. 2013). The Secretary's interpretation is compelling. First, the Secretary's interpretation is consistent with the decision Congress made to use the term "workweeks" to describe the twelve units of leave guaranteed by the FMLA, rather than the word "weeks." FMLA leave is unpaid, 29 U.S.C. § 2612(c), but the statute requires that employers hold employees' jobs open during the period the employee requires to convalesce, care for ill relatives, or for maternity/paternity leave, *id.* § 2614(a)(1)(A). If Congress intended the employer to hold the job for twelve "weeks" it could have said so. *BedRoc*, 541 U.S. at 183 ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." (alteration and quotation omitted)). Instead, Congress required that jobs be held open for up to twelve "workweeks." 29 U.S.C. § 2614(a)(1)(A) (employees who take up to twelve workweeks of leave "under section 2612 . . . shall be entitled . . . to be restored by the employer to" their prior position or an equivalent).

Second, as discussed, the FMLA does not refer to "workweeks" in a vacuum; it refers to "workweeks *of leave*" and employees do not need to use leave if they are not scheduled to work. *See* 29 U.S.C. § 2612(a)(1). Third, the intermittent leave provisions of the statute require that workweeks be defined by the employees' own work schedules, contrary to the majority's definition, which

counts every week the employer is operating, even if the employees are not scheduled to work. *See* 29 U.S.C. § 2612(b)(1). The Secretary's interpretation is the only definition that can be harmonized with the statute as a whole.

The Secretary's interpretation is also persuasive because it reflects what we understand from experience. Employees who are not required to work on weekends or on particular holidays are not expected to seek permission to be absent from work. Indeed, there is no work from which to be absent. Imagine an employee who works a traditional nine-to-five, Monday-through-Friday job and is entitled to ten vacation days per year. We would not hesitate to decry an employer who required this hypothetical employee to count Saturdays and Sundays when calculating the ten days *of leave*. Rotational employees' "off-weeks" are the equivalent because off-weeks are time rotational employees are not expected to be on duty. Just as one would not consider "day" to be synonymous with "workday," we should not divest all meaning from the "work-" part of "workweek," nor should "leave" be read out of the FMLA's basic guarantee: "12 workweeks of leave." 29 U.S.C. § 2612(a)(1).

Finally, the Secretary's interpretation is persuasive because it is consistent with the Act's stated purposes. *See* Reading Law 63 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."). Congress enacted the statute to provide "job security to employees who must be absent from work . . . ." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001). The need for federal legislation on this issue stemmed from a realization that "employers' leave policies often do not permit employees reasonably to balance their family obligations and their work life," *id.*, and one of the stated purposes of the FMLA was "to entitle employees to

take reasonable leave for medical reasons," 29 U.S.C. § 2601(b)(2).  The Secretary's interpretation promotes these goals because it allows all qualifying employees—whether they work Monday–Friday, rotational schedules, or some other schedule—twelve of their workweeks of unpaid leave.

For more than two decades the Secretary has defined "workweeks" by reference to employees' regular weekly work schedules, and "workweeks of leave" to mean weeks during which employees would have been required to work but for the taking of leave.  The Secretary's longstanding interpretation is "the most persuasive account that has been put forward," *Indep. Training & Apprenticeship Program*, 730 F.3d at 1037: it defines workweek consistently throughout the FMLA, and it furthers the FMLA's objectives.  For these reasons, I would adopt the Secretary's interpretation of  "workweeks" as weeks in which an employee is scheduled to work, and affirm the district court's order.[3]

## IV

The majority does not support its contrary conclusion that Congress intended to incorporate the FLSA's regulatory

---

[3] The State discounts the Secretary's interpretation as a mere litigation position, but this misapplies the term.  A litigation position is one a party *only* advances in litigation and is "wholly unsupported by regulations, rulings, or administrative practice."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988); *see Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) (declining to defer to the government's statutory interpretation because it was "unmoored from any official agency interpretation" and explaining the government's position "appear[ed] to be purely a litigation position, developed during the course of" that case).  Far from cooking up a litigation position during the course of this dispute, the Secretary has articulated the same definition of "workweek" for more than two decades.

definition of "workweek" when it passed the FMLA nearly sixty years later.  There is no general rule that once a thematically similar statute has defined a term, any subsequent statute that fails to define the term necessarily incorporates the first statute's definition.  Nor is there a general rule that courts must look to the FLSA when interpreting the FMLA.  And critically, even assuming Congress intended to incorporate the FLSA's definition, that statute does not support the majority.  The FLSA's guarantee of overtime wages for hours worked in excess of a forty-hour workweek is necessarily judged by looking to employees' individual work schedules, not to the employer's hours of operation.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.105.

Congress enacted the FLSA in 1938 to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a); *see also Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 887 (9th Cir. 2017).  One of the two signature protections provided by the FLSA—the payment of overtime for work in excess of forty hours—must be calculated according to employees' individual work schedules because whether an employee is entitled to overtime pay depends entirely upon how many hours the employee works in a given week.  29 U.S.C. § 207(a)(1) (employers must pay overtime to employees who work "longer than forty hours" during a workweek); s*ee, e.g.*, *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) ("[A] plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week.").

The concern that employers might define, and redefine, employees' workweeks to avoid paying overtime has persisted since the FLSA was first enacted, and it gives context to DOL's specific need to define "workweek" to implement the FLSA. *See e.g.*, *Walling v. Helmerich & Payne*, 323 U.S. 37, 39–40 (1944) (invalidating a "split-day plan of compensation" designed "to deprive the employees of their statutory right to receive" overtime pay); *Rogers v. City of Troy*, 148 F.3d 52, 55–56 (2d Cir. 1998) (explaining that courts have repeatedly disapproved of employers' practices that "resulted in evasions of the minimum wage and overtime provisions of the FLSA").

The majority relies on the following FLSA implementing regulation:

> *An employee's workweek* is a fixed and regularly recurring period of 168 hours— seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, *a single workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of employees*. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him.

29 C.F.R. § 778.105 (emphasis added). The majority emphasizes the regulation's final sentence and, curiously, contends that it "makes clear that a 'workweek' does not revolve around an individual employee's own work

schedule." In fact, the regulation does just that, defining individual employees' "workweeks" as fixed seven-day periods and expressly stating that employees' workweeks need not be the same as the workweek for the plant or establishment as a whole. *Id.*

It is uncontested that "workweeks" are seven-day units of time against which an employee's entitlement to a statutory benefit is measured, but the FLSA's definition of "workweek" simply cannot be reconciled with the majority's conclusion that "workweek" must include any time the employer is operational. Indeed, the calculation of an employee's forty-hour workweek turns on the number of hours an employee works, not on the hours the employer is open for business. 29 C.F.R. § 778.105.[4]

Finally, the majority falls back on its judgment that reading "workweek" to exclude a rotational worker's "off-weeks" would create a fundamentally unfair windfall for rotational workers. The majority decides the better option is for rotational workers to use six of their "off-weeks" and receive just six weeks of leave because twelve consecutive weeks away from work is the balance Congress struck. This overlooks that the balance Congress struck addressed employees working traditional schedules. There is no indication Congress considered employees working rotational schedules, and Congress left it to the Secretary to promulgate regulations implementing the Act. "It is beyond our province . . . to provide for what we might think . . . is

---

[4] The majority also contends the use of "administrative workweek" in Title II of the FMLA furthers their cause because it is essentially equivalent to the FLSA's definition of "workweek." But for the reasons explained, the FLSA's definition of "workweek" contradicts the majority's contention that a workweek is the period an employer is operational.

the preferred result." *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring).

The FMLA provides that all eligible employees—whether they work rotational schedules or otherwise—are entitled to twelve of their workweeks of leave, not twelve consecutive weeks away from work. Congress set twelve workweeks of leave as the default, and the FMLA does not carve out a different rule for rotational employees. "[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do." *United States v. Locke*, 471 U.S. 84, 95 (1985).

The Secretary's interpretation of the FMLA furthers the Act's stated purposes; it can be harmonized with the FMLA's other provisions and it allows the same definition of "workweek" to be used throughout the statute. The same is not true of the definition the majority imports from the FLSA. For all of these reasons, I would give deference to the Secretary's interpretation and affirm the district court's summary judgment order.